# UNION INSULATING & CONSTRUCTION COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 263.   Submitted April 21, 1926.—Decided April 26, 1926.

1. Stipulations by the United States, in a construction contract, to furnish a right of way for ingress and egress to and from the places where materials to be furnished by the United States were stored and the place of their use in the work, *construed,* in relation to other facts, as allowing the contractor to use a right of way on which was a railroad, but not as obliging the Government to put the railroad in repair.   P. 122.
2. Damages will not be awarded for a slight delay in starting work under a contract, not satisfactorily shown to have been caused wholly by the Government, where the contractor made no protest at the time and no claim until nine months later.   P. 124.

59 Ct. Cls. 582, affirmed.

APPEAL from a judgment of the Court of Claims rejecting claims under a building contract.

*Messrs. Edmund D. Adcock* and *George I. Haight* were on the brief for appellant.

*Solicitor General Mitchell* and *Assistant Attorney General Galloway* were on the brief for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The appellant sued the United States in the Court of Claims for $30,697.73, for breach of a contract made by it with the United States for certain construction work at the government nitrate plant No. 2 at Muscle Shoals,

Alabama. The work was done and the contract price paid. The amount here sued for was made up of nine claims for damages for breaches and extras. The Court of Claims found against the claimant on every cause of action alleged. Appeal to this Court relates to only two of them.

The first is for $3,059.65, and is based on the alleged failure of the United States to furnish a right of way as stipulated in the contract for use in hauling materials to the place of construction.

After providing that the contractor should furnish certain materials for construction, the contract read:

"The U. S. of America to furnish at its present location on the reservation at U. S. Nitrate Plant No. 2, all other construction materials, the Contractor to perform all necessary labor required in transporting such materials to the proper place for use in construction, the U. S. of America at all times to furnish the necessary right of way for ingress and egress to the place of present storage of such materials and the place of ultimate use in construction.

"The United States Government further agrees to furnish to the Contractor for the purpose of transporting materials and performing the necessary construction work, such tools and equipment including locomotives, flat cars, dump cars, hoisting engines, locomotive cranes, steam shovels, concrete mixers, air compressors, automobile trucks, clam shell buckets, etc., as are now the property of the United States Government and available at U. S. Nitrate Plant No. 2, and in such quantities as in the discretion of the Constructing Quartermaster, may be reasonably necessary for such use in construction and further may be reasonably furnished by the United States Government without material detriment or inconvenience to the United States Government. The Contractor to accept such equipment as is and to assume all responsibility

for placing such equipment in first class working condition and the proper care and maintenance of such equipment from the time it is turned over to him by the Constructing Quartermaster."

Finding No. 2 by the court is

" The right of way furnished by the United States consisted of railroad tracks running from the site of the work to the storage yards. These tracks were used by others and were not in good condition when the plaintiff submitted its bid, nor were they in any worse condition when it began its work under the contract. The United States did not keep the tracks in good condition during the period of the performance of the contract, but turned them over to the plaintiff for its use with the necessary rolling stock. The plaintiff expended the sum of $705.50 for labor in repairing railroad tracks, and $700.66 for making repairs to equipment damaged by reason of the defective tracks; it also expended the further sum of $1653.49 for labor in connection with derailments."

What the Government agreed to furnish was a right of way, not a railroad for transportation. It agreed that ingress and egress by this right of way should at all times during the performance of the contract, be given the contractor, and such ingress and egress were afforded it. The defective track on the right of way was evident to the contractor when it made the contract, and the reasonable construction of the contract is that the contractor, in order to avail itself of the right of way with constant ingress and egress, took over the track as it was as part of the equipment for transportation, just as it did the locomotive and cars, and as it found it, with sole responsibility for placing it in working condition and maintaining it for its use. It is clear that the Court of Claims was right in rejecting this claim.

The other claim was for damages for delay by the Government in arranging for the contractor's start upon the

work. The contract provided that the work should be commenced on June 10, 1920, and by that time the contractor had its executive office force at the plant. The contractor was able to begin work on June 13. The delay resulted from the inability to get material issued to the contractor. The actual amount expended for salary and services to the persons kept waiting was $360. No complaint and no protest were made by the contractor at the time and no claim was filed by the contractor until March 14, 1921. The holding of the Court of Claims was that because it did not satisfactorily appear that the delay was due wholly to the Government and in view of the absence of a claim or protest for nine months thereafter, the claim should be rejected. We concur in this.

*Judgment affirmed.*